GILCHRIST-FORDNEY Co. *v*. THIGPEN.

[74 South. 823, Division B.]

1. LOGS AND LOGGING. *Timber deed. Description of land.*
   A deed to the timber on fifty acres on the east half of the north-east quarter of section 10, township 1, north, range 10 east, is void for uncertainty in description, as it would be impossible for any person to take this deed and from it alone, locate the timber or what particular timber was intended to be conveyed.

2. LOGS AND LOGGING. *Reservation of timber.*
   In order to retain timber from a conveyance such reservation must be written in the deed.

3. INJUNCTION. *Title to support action. Cutting timber.*
   In a suit to enjoin cutting timber and for cancellation of defendant's claim thereto, complainant must show title in itself and it cannot rely on the weakness of defendant's title.

APPEAL from the chancery court of Jasper county. HON. G. C. TANN, Chancellor.

Suit by Gilchrist-Fordney Company against S. F. Thigpen and others. From a judgment for defendants, complainant appeals.

The facts are fully stated in the opinion of the court.

*Deavours, Hilbun & Deavours,* for appellant.

*Byrd & Byrd,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

Appellant filed its bill in the chancery court of the second district of Jones county against S. F. Thigpen

and S. L. Williams, praying for an injunction against
the cutting of timber by the appellees on the East
half of the Northeast quarter of section 10, township
1 N., range 10 E., and for a cancellation of the claims
of appellee as to timber growing on said land. The ap-
pellant claims title through three different sources:
First, the heirs of Benjamin Thompson, deceased; sec-
ond through deed from C. Thigpen & Co.; and, third,
by adverse possession.

The lands in question were patented from the United
States to John Crosby in 1858, and afterwards sold on
execution to Benjamin Thompson. In 1876 the lands
were sold to the state for tax, and on February 15,
1886, the state sold the land to Stafford Peyton, from
whom, by succession of transfers, title passed to C.
Thigpen & Co., a mercantile firm composed of C. Thig-
pen, W. M. Sprinkle, and J. W. Gaston, from which
parties the title in this case becomes the common source
of title, there having been adverse possession under the
tax title for a period of ten years prior to the sale from
Thigpen & Co. to either of the parties in this cause.

On the 3d day of February, 1900, C. Thigpen attempt-
ed to convey the timber on the lands for C. Thigpen &
Co. to G. J. Pope, trustee, who conveyed it to the Kings-
ton Lumber Company, which company conveyed it to
the appellant. The deed from C. Thigpen & Co., "per
C. Thigpen," described the land on which the timber
grew which was attempted to be conveyed as follows:
"Fifty acres on the East half of the Northeast quarter
of section 10, township 1, range 10, in Jasper county,
Miss." In the year 1901 C. Thigpen, W. M. Sprinkle,
and J. W. Gaston conveyed the East half of the
Northeast quarter, above referred to, to B. F.
Crosby, who went into possession of the tract of land
so conveyed, and remained in possesion until the con-
veyance to E. L. Ward in 1913. Ward subsequently con-
veyed to S. F. Thigpen, the appellee, and Thigpen con-
veyed an interest in the land to the appellee Willams.

In 1906 B. F. Crosby conveyed the timber on the lands to the Gulf States Investment Company, a corporation who conveyed to another party; and this party cut a portion of the timber therefrom. Under the contract of 1906 for the sale of said timber, it was provided that the timber must be removed within a period of five years from April 5, 1906. A portion of the timber was not so removed because the appellant claimed title thereto from the deed to it, through chain of title from C. Thigpen. B. F. Crosby, while upon the land, cultivated a portion of it, used the timber for fencing, and cleared some of the lands, and exercised general ownership over it. There was proof in the record that Crosby had knowledge at the time he bought, that the timber on the land had been previously sold to Pope, trustee, and from him to the appellants. Also, there was proof that he made several statements that the timber did not belong to him. There was no reservation of the timber in the deed from Thigpen, Sprinkle and Gaston to Crosby, and none in the conveyance from Crosby to Ward, and from Ward to the appellee. In 1910, some nine years after the conveyance to Crosby, Thigpen, Gaston, and Sprinkle, each gave a quitclaim deed, reciting therein that it was for the purpose of perfecting the deed given by C. Thigpen in 1900 to Pope, trustee.

The appellant's claim of title by adverse possession is not supported by proof of any act of possession of the land by it, or any one acting for it, for any period of time; and during all the time from the deed to Crosby in 1901 to the filing of the bill in 1914, some other party was in the actual possession of the land; and there is a complete failure to prove any title by adverse possession so far as the appellant is concerned.

We think the deed from C. Thigpen & Co., "per C. Thigpen" to "trustee, in 1900, is absolutely void for want of certainty in the description. *Early* v. *Long,* 89 Miss. 285, 42 So. 348; *Tierney* v. *Brown,* 65 Miss. 563, 5 So. 104, 7 Am. St. Rep. 679; *Lazar* v. *Caston,* 67 Miss. 275, 7 So.

321. It would be impossible for any person to take this deed, and, from it alone, locate the timber, or what particular timber was intended to be conveyed. When it was attempted to perfect this deed in 1910, no deed was procured from Crosby, and no suit filed to correct the deed within the ten-year term provided under our statutes for the bringing of suit in chancery to perfect titles to real estate. In order to retain the timber from Crosby's conveyance, the reservation would have to be written into the deed; and when Crosby conveyed the land absolutely, with no reservations, to Ward, the full legal title to the timber passed with the land. It was the duty of the complainant to show title in itself to maintain the action here instituted; it cannot rely upon the weakness of the appellees' title. The appellees have a good paper title; and while the proof and witnesses for the plaintiff show that Crosby had knowledge of the alleged claim of the appellants, such proof merely tends to weaken the title of appellees, but does not give the appellant standing in court, and they cannot predicate this action upon the proof in this record. The chancellor having reached the same conclusion, the case is affirmed.

*Affirmed.*